Petition for Writ of Mandamus Conditionally Granted and Memorandum
Opinion filed September **, 2010









Opinion
filed October 13, 2010, withdrawn; Petition for Writ of Mandamus Conditionally
Granted and Opinion filed October 21, 2010.

 

In
The

Fourteenth
Court of Appeals



NO. 14-10-00359-CV



 

In Re Choice! Energy, L.P., E. Javier Loya, OTC Energy
Holdings, L.P., Choice! Power, L.P. and Choice! Energy Services Retail, L.P.,
Relators



 



ORIGINAL
PROCEEDING



WRIT OF MANDAMUS



OPINION

On April 23, 2010, relators, Choice! Energy, L.P., E.
Javier Loya, OTC Energy Holdings, L.P., Choice! Power, L.P. and Choice! Energy
Services Retail, L.P., filed a petition for writ of mandamus in this Court.  See
Tex. Gov’t Code Ann. § 22.221 (Vernon 2004); see also Tex. R. App. P.
52.  In the petition, relators ask this Court to compel the Honorable Steven E.
Kirkland, presiding judge of the 215th District Court of Harris County, to set
aside his February 22, 2010 contempt order.  We conditionally grant the
petition.

Background

            In
1998, Choice! Natural Gas sued Amerex Power, Ltd., Amerex Natural Gas I, Ltd. (collectively,
“Amerex”), Gina Musachia, and Jon T. Mulvihill, asserting claims related to the
Amerex’s solicitation and recruitment of Musachia and Mulvihill, who were
former Choice! Natural Gas employees.  Choice! Natural Gas had employment
agreements with Musachia and Mulvihill, containing covenants not to compete. 
The parties settled the case and, on November 6, 1998, the trial court signed
an agreed permanent injunction and final judgment.  

            The
November 6, 1998 judgment contains reciprocal paragraphs prohibiting the
solicitation and recruitment of the parties’ current or former employees.  The
November 6, 1998 judgment states with respect to Choice! Natural Gas:

CHOICE!, along with all entities controlled by or under the
common control with CHOICE! (which CHOICE! hereby stipulates it is authorized
to bind to this Agree Permanent Injunction and Final Judgment), including
CHOICE! Harbour, Inc., Janvin Co., E.J. Loya, Inc., CHOICE! Energy Consulting,
Inc., CHOICE! Energy (NE), Limited Partnership and CHOICE! Power & Light,
Inc. (hereinafter collectively the “CHOICE! Companies”), together with their
respective shareholders, directors, officers, partners, agents, employees,
servants, representatives and all persons in active concert or participation with
them, and all other persons who receive actual notice of this order, shall
cease, desist and refrain from, either directly or indirectly, on behalf of
either themselves or any other person or entity, engaging in any soliciting
for employment, or otherwise recruiting for employment, the current or former
employees of the Amerex Companies if the employment resulting from such
solicitation or recruitment would result in a violation of any provision
contained in said employee’s preexisting employment agreement with the Amerex
Companies, provided, however, that the CHOICE! Companies will not be prohibited
from hiring any former employee of the Amerex Companies after the 548th day
following that employee’s termination of employment with the Amerex Companies.[1]

            On
November 24, 2009, almost ten years after the 1998 judgment became final, four
of Amerex Brokers, LLC’s employees—Allen Schoephoerster, Ben Nigh, Martin
Holmes, and Bram Taylor (collectively, the “Brokers”)—resigned.  Each of them
signed employment contracts with Choice! Power, L.P. on December 1, 2009.  

            On
December 22, 2009, Amerex filed a motion in the 1998 lawsuit for contempt and
to enforce the agreed permanent injunction and final judgment against
relators.  In the motion, it alleged that relators violated the terms of the
permanent injunction by soliciting or recruiting the Brokers.  Amerex asked
that relators be held in contempt for violating the permanent injunction and be
restrained from employing the Brokers.  Amerex also noted that the Brokers were
subject to employment agreements with Amerex that contain covenants not to
compete.  However, it has not sued the Brokers for breach of their employment
contracts.  

            The
trial court held an evidentiary hearing on January 29, 2010, and signed the contempt
order on February 22, 2010.  The trial court found relators in contempt of the
agreed permanent injunction and final judgment, and ordered them “to purge
themselves of their civil contempt—to wit to refrain from employing the [Brokers]
in violation of the [Brokers’] employment agreements with Amerex during the
pendency of the [Brokers’] covenants not to compete in their Amerex employment
contracts.”  The trial court further stated that relators’ “failure to purge
themselves of their contempt will subject them to monetary penalties and a
holding of criminal contempt.”  

Standard of Review

            Because
no restraint is involved, a petition for writ of mandamus is relators’ only
possible relief.  In re Long, 984 S.W.2d 623, 625 (Tex. 1999) (orig.
proceeding) (per curiam); Rosser v. Squier, 902 S.W.2d 962 (Tex. 1995) (orig. proceeding) (per curiam).  To be entitled to the extraordinary relief of
a writ of mandamus, the relator must show that the trial court abused its
discretion and there is no adequate remedy by appeal.  In re Long, 984
S.W.2d at 625.  

            Constructive
contempt is the violation of a written order outside the trial court’s
presence.  Ex parte Chambers, 898 S.W.2d 257, 259 (Tex. 1995) (orig.
proceeding).  Contempt is not to be presumed, but rather is presumed not to
exist.  Deramus v. Thornton, 160 Tex. 494, 333 S.W.2d 824, 830 (1960)
(orig. proceeding).  While we cannot weigh the evidence supporting the trial
court’s contempt finding in this mandamus proceeding, we can determine whether
the contempt order is void because there is no evidence of contempt.  In re
Long, 984 S.W.2d at 626–27.  

Analysis

The
Brokers Are Not Subject to the Judgment

            Relators
contend that the 1998 judgment does not apply to the Brokers because they were
not “current” or “former” Amerex employees at the time the judgment was entered
on November 6, 1998.  We agree.  An agreed judgment should be construed in the
same manner as a contract.  Gulf Ins. Co. v. Burns Motors, Inc., 22
S.W.3d 417, 422 (Tex. 2000).  Ordinary principles of contract law require us to
determine the true intent of the parties as expressed in the agreed judgment.  Keys
v. Litton Loan Servicing, L.P., No. 14-07-00809-CV, 2009 WL 4022178, at *2
(Tex. App.—Houston [14th Dist.] Nov. 24, 2009, no pet.) (mem. op.) (citing Anzilotti
v. Gene D. Liggin, Inc., 899 S.W.2d 264, 267 (Tex. App.—Houston [14th Dist.]
1995, no writ)).  We examine the writing as a whole in an effort to harmonize
and give effect to all the provisions of the contract so that none will be
rendered meaningless.  J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223,
229 (Tex. 2003).  We give terms their plain, ordinary, and generally accepted
meaning unless the contract shows the parties used them in a technical or
different sense.  Heritage Res., Inc. v. NationsBank, 939 S.W.2d 118,
121 (Tex. 1996).  In construing a contract, the court may not rewrite the
contract or add to its language.  Am. Mfrs. Mut. Ins. Co. v. Schaefer,
124 S.W.3d 154, 162 (Tex. 2003).  

 

            Amerex
argues that we should construe the word “current” in the1998 judgment in a way
so that its effect is not limited to 1998 employees but would extend to
individuals employed at the present time.  Amerex argues that the only
significance of the November 6, 1998 date is that it is date the trial court
signed the judgment; Amerex claims that the date otherwise has no bearing on
the interpretation of the judgment.  We disagree.  The judgment cannot be
interpreted in a temporal vacuum.  The November 6, 1998 date provides the point
at which the parties’ rights, duties, and remedies were defined.  

            Amerex
further argues that the parties’ intent to bind “future” employees is evidenced
by the following factual recitations in the 1998 judgment:  

That the parties have agreed, and by their executions set
forth below, do hereby agree, to respect the employment agreements of the other
and not to aid or abet, directly or indirectly, current or former employees of
the other in breaching or violating the employees’ obligations under such
agreements.

*        *        *

That in exchange for the injunctive relief set forth below,
each party has agreed, and by their executions set forth below do hereby agree,
that they may amend and/or modify their present and/or future employment
agreements at any time and in any manner without the prior notice or
approval of any other party.[2]

            Contrary
to Amerex’s assertion, however, these paragraphs address employment contracts
of those employees who were current or former employees of Choice! or Amerex in
1998.  They do not address employment contracts of “future” employees who had
not yet been hired.[3] 


            In
fact, “future” employees are not referenced anywhere in the judgment.  When a
contract specifically mentions some, but not all, members of a certain class,
as here, we must assume the parties intended to exclude other members that were
not referenced.  See CKB & Assocs., Inc. v. Moore McCormack Petroleum,
Inc., 734 S.W.2d 653, 655 (Tex. 1987) (applying the contract principle of unius
est exclusion alterius).  The inclusion of “current” and “former”
employees, but not “future” employees, supports an inference that the parties
intended to exclude “future” employees from those employees subject to the
November 6, 1998 agreed judgment.  See id.  Applying these
well-established rules of contract construction, we conclude that the Brokers
are not subject to the November 6, 1998 judgment.  

            A
contempt order is void when it purports to punish the contemnor for conduct
that is beyond the scope of the trial court’s prior order or decree.  Deramus,
333 S.W.2d at 830.  Because the Brokers are not subject to the November 6, 1998
agreed judgment, there is no evidence that relators violated it.  In the
absence of any evidence that relators violated the prior agreed judgment, trial
court’s February 22, 2010 order finding relators in contempt is void.  See
In re Long, 984 S.W.2d at 626–27.  

This
Original Proceeding is Not Moot

            Amerex
argues that this original proceeding is moot.  On August 17, 2010, Amerex filed
a notice of waiver in the trial court that it has explicitly waived the right
to complain about any failure by relators to comply with the contempt order
between February 22, 2010 and May 24, 2010, when the covenants not to compete
in the Brokers’ employment agreements expired.  Amerex, however, has not waived
its right to seek damages related to relators’ alleged violations of the agreed
judgment.  

            The
mootness doctrine limits courts to deciding cases in which an actual
controversy exists between the parties.  Fed. Deposit Ins. Corp. v. Nueces
County, 886 S.W.2d 766, 767 (Tex. 1994).  Generally an appeal is moot when
the court’s action on the merits cannot affect the rights of the parties.  VE
Corp. v. Ernst & Young, 860 S.W.2d 83, 84 (Tex. 1993) (per curiam).  

            Amerex
seeks only to have relators’ petition for writ of mandamus dismissed as moot. 
According to relators, however, Amerex has threatened to file a separate
lawsuit against one or more of the relators asserting claims related to the
hiring of the Brokers.  Because Amerex has not waived its right to seek
damages, it is still poised to use the contempt order in support of any
subsequent suit for damages.  Relators will suffer the adverse consequences of
the void contempt order unless it is set aside.[4] 
Therefore, this court’s decision on the pending petition will affect the
parties’ rights, and Amerex’s “waiver” does not render relators’ petition moot.[5] 


Laches
Does Not Bar Mandamus Relief

            Amerex
contends that relators’ petition is barred by laches because they waited some
60 days after the trial court signed the contempt order to file their petition
for writ of mandamus.[6] 
Although mandamus is not an equitable remedy, its issuance is influenced by
equitable principles.  In re Int’l Profit Assocs., Inc., 274 S.W.3d 672,
676 (Tex. 2009) (orig. proceeding) (per curiam).  A delay in the filing of a
petition for writ of mandamus may waive the right to mandamus unless the
relator can justify the delay.  Id. 

            Laches,
however, is not applicable when the order subject to the mandamus proceeding is
void.  In re Chester, 309 S.W.3d 713, 718 (Tex. App.—Houston [14th
Dist.] 2010, orig. proceeding).  Since we hold that the order in question in
this case is void, the doctrine of laches similarly does not apply here.  Id.

            Moreover,
between the time the trial court signed the contempt order and relators filed
their petition in this Court, they filed a motion requesting that the trial
court vacate the contempt order.  See In re Perritt, 992 S.W.2d 444, 446
(Tex. 1999) (orig. proceeding) (per curiam) (“A party’s right to mandamus
relief generally requires a predicate request for some action and a refusal of
that request.”).  The trial court denied relators’ motion to vacate on March
22, 2010, and relators’ counsel did not learn of the trial court’s ruling until
April 8, 2010.  Accordingly, the record does not reflect that relators
unjustifiably delayed filing their petition in this court.  

Conclusion

We conclude that the trial court’s February 22, 2010
order finding relators in contempt is void.[7]  Accordingly, we
conditionally grant the petition for writ of mandamus and direct the trial
court to vacate its February 22, 2010 order.  The writ will issue only if the
trial court fails to act in accordance with this opinion.  We further deny
Amerex’s motion to dismiss this original proceeding as moot.  

 

                                                                                    

                                                                        /s/        Kent
C. Sullivan

                                                                                    Justice

 

 

Panel consists of Justices Brown,
Sullivan, and Christopher.









[1] Emphasis
added.  





[2] Emphasis
added.  





[3] Notably,
these factual recitations precede, and are not subsequently repeated in,
the portion of the court’s decree that actually decides the parties’
respective rights as to solicitation and recruitment of “current” and “former”
employees.  See Crider v. Cox, 960 S.W.2d 703, 705 (Tex. App.—Tyler
1997, writ denied) (explaining that factual recitations do not actually
determine the parties’ rights and interests).  Therefore, these paragraphs
should not be considered as part of the trial court’s decision.  See Ellis
v. Mtge. & Trust, Inc., 751 S.W.2d 721, 724 (Tex. App.—Fort Worth 1988,
no writ).





[4] See In
re Salgado, 53 S.W.3d 752, 757–58 (Tex. App.—El Paso 2001, orig.
proceeding) (holding protective order against father was not moot, even though
it would expire before appellate court could issue opinion, because it carried
collateral consequence—father’s sister had used period of custody to argue she
had standing to file suit affecting parent-child relationship); In re M.E.G.,
48 S.W.3d 204, 208 n.5 (Tex. App.—Corpus Christi 2000, no pet.) (holding appeal
of enforcement order was not moot, even thought appellant was released from
custody with no stipulations on appellant’s remaining free, because appellant
may suffer collateral consequences from still valid order); Ex parte Young,
724 S.W.2d 423, 425 (Tex. App.—Tex. App. Beaumont 1987, orig. proceeding)
(holding application for writ of habeas corpus was not moot, even though trial
court released relator from jail, because he may still suffer collateral
consequences from still valid order). 





[5] We have
previously rejected Amerex’s contention that the expiration of the Brokers’
covenants not to compete on May 24, 2010 rendered relators’ petition moot.  





[6] Amerex
asserts that the 60-day delay in filing the petition is unreasonable because
the covenants not to compete in the Brokers’ employment contracts expired on
May 24, 2010.  However, as previously noted, we have already rejected Amerex’s
position that relators’ petition is moot based on the expiration of the
covenants not to compete.  





[7] Because
we have found that the Brokers are not subject to the agreed judgment and,
therefore, there is no evidence that relators violated the judgment, it is not
necessary to address the other issues raised in relators’ petition.